STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-1496

KENNETH MARTIN

VERSUS

BEVERLY S. MARTIN, NOW WOODS

**********

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 81,802, DIV. A
HONORABLE VERNON BRUCE CLARK, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of Ulysses G. Thibodeaux, Chief Judge, John D. Saunders, Oswald A. Decuir, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.

REVERSED IN PART, AFFIRMED IN PART AND REMANDED.

Pickett, J., dissents and assigns reasons.

Scott Westerchil
Attorney at Law
301 South 3rd Street
Leesville, LA 71446
(337) 238-0019
COUNSEL FOR DEFENDANT/APPELLANT:
    Beverly S. Martin, now Woods

**Clay Williams**
**Williams & Nelson**
**P. O. Drawer 1810**
**Leesville, LA 71496**
**(337) 238-4704**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**Kenneth Martin**

**SAUNDERS, J.**

This appeal arises out of a divorce and custody case wherein the trial court removed the mother's domiciliary status and assigned it to the father. The grounds for modification of custody were, *inter alia,* the mother's failure to follow the relocation procedure, set forth in La.R.S. 9:355.1-.17. The mother appeals, seeking to be reinstated as domiciliary parent of the seven year old female child. For the reasons discussed herein, we reverse in part and affirm in part the judgment of the trial court and remand for a new trial.

**FACTS & PROCEDURAL HISTORY**

Appellee Kenneth Martin (hereinafter "Martin") filed for divorce from appellant Beverly Martin, now Beverly Woods (hereinafter "Woods") on August 13, 2009. Thereafter, on September 2, 2009, the trial court issued an interim judgment ordering joint custody of their minor child, Austin Elise Martin (hereinafter "Austin"). The interim judgment assigned neither parent as custodial parent, with Martin being entitled to visitation every other weekend and one evening per week and any other times agreed upon between the parties. That judgment remained in effect until the trial court issued a divorce judgment and custody decree on August 9, 2010, which designated Woods as the primary custodial parent subject to visitation in favor of Martin as set forth in the court's joint custody implementation plan. The plan generally provided that Martin was entitled to visitation on alternating weekends, alternating holidays, and for five weeks during the summer.

Woods sent a letter to Martin, postmarked December 3, 2010, notifying him of her intent to relocate to Covington, Louisiana on January 1, 2011. Afterwards, on December 28, 2010, Martin filed an objection to the relocation of Austin and a rule for contempt and to modify custody. After trial on the merits, which was held

on May 16, 2011, the trial court found Woods in contempt of court for violating the joint custody implementation plan by having an overnight guest of the opposite sex to whom she was not married, failing to provide school records and extra-curricular schedules to Martin, and failing to comply with court ordered visitation. As a result, she was ordered to pay $200.00 plus court costs and $400.00 in attorney fees. Further, the court found Woods in violation of the relocation statutes, L.a. R.S. 9:355.1-17, and ordered that Austin be returned to Vernon Parish by June 4, 2011. Finally, it was ordered that the previous custody arrangement be modified to name Martin the primary custodial parent, subject to Woods's visitation pursuant to the court's joint custody implementation plan. It is from this judgment that Woods appeals. For the following reasons, we reverse in part and affirm in part the decision of the trial court and remand for a new trial consistent herewith.

**ASSIGNMENTS OF ERROR**

1. Whether the trial court abused its discretion in modifying custody, thereby stripping appellant Woods of her primary custodial parent status and naming appellee Martin as the primary custodial parent.

2. Whether the trial court erred in denying Woods's motion for a new trial.

**LAW AND ANALYSIS**

In her first assignment of error, Woods asserts that the trial court erred by removing her status as primary custodial, or domiciliary, parent, and assigning that status to Martin. We find merit in this contention.

"A trial court's determination regarding child custody is to be afforded great deference on appeal and will not be disturbed absent a clear abuse of discretion." *Franklin v. Franklin*, 99-1738, p. 4 (La.App. 3 Cir. 5/24/00), 763 So. 2d 759, 762. A judgment of the trial court will not be disturbed on appeal unless it is clearly wrong or manifestly erroneous, and this assessment must be made in light of the

entire record. *Rosell v. ESCO*, 549 So.2d 840 (La.1989); *Mart v. Hill*, 505 So.2d 1120 (La.1987). In awarding or modifying custody, the court must do so in regards to the best interest of the child. La. Civ. Code art. 131.[1]

The burden of proof in a modification of custody matter is dependent on the type of custody decree issued by the trial court:

> When a trial court has made a considered decree of permanent custody, the party seeking to modify the decree bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody, or of proving by clear and convincing evidence that any harm likely to be caused by a change of environment is substantially outweighed by the advantages to the child. *Bergeron v. Bergeron*, 492 So.2d 1193 (La.1986); *Wilson v. Wilson*, 30,445 (La.App. 2 Cir.4/9/98), 714 So.2d 35.
>
> A considered decree is one for which evidence as to parental fitness to exercise custody is received by the court. *Evans v. Terrell*, 27,615 (La.App.[2d Cir.]2/6/95), 665 So.2d 648, *writ denied*, 96-0387 (La.5/3/96), 672 So.2d 695. By contrast, a judgment with a custody plan that was entered by default, was not contested[,] or was merely entered by consent of the parties is not a considered decree. *Barnes v. Cason*, 25,808 (La.App. 2 Cir. 5/4/94), 637 So.2d 607, *writ denied*, 94-1325 (La. 9/2/94), 643 So.2d 149.

---

[1] While a court is to consider all relevant factors in evaluating the best interest of the child, the twelve factors listed in the Civil Code are as follows:

(1) The love, affection, and other emotional ties between each party and the child.

(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(6) The moral fitness of each party, insofar as it affects the welfare of the child.

(7) The mental and physical health of each party.

(8) The home, school, and community history of the child.

(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

(11) The distance between the respective residences of the parties.

(12) The responsibility for the care and rearing of the child previously exercised by each party.

La. Civ. Code art. 134.

....

> **Where the Bergeron burden is inapplicable, the party seeking to modify the custody arrangement need only prove a change in circumstances since the original decree and prove that the new custody arrangement would be in the best interest of the child.** *Wilson*, *supra*; *Barnes*, *supra*.

*Schuchmann v. Schuchmann*, 00-094, p. 3 (La.App. 3 Cir. 6/1/00), 768 So.2d 614, 616 (quoting *Roberie v. Roberie*, 33,168 p. 3 (La.App. 2 Cir. 12/8/99), 749 So.2d 849, 852) (emphasis added). In the instant case, the trial court correctly acknowledged that the June 21, 2010 stipulated custody decree was a consent decree. Therefore, the strict standards of *Bergeron* do not apply.

We now turn to the procedures for relocating a child whose custody is shared. The first step in the relocation process is notification to the non-custodial parent. Before relocating the child, the custodial parent must seek judicial authorization or consent of the non-custodial parent:

> A parent entitled to primary custody of a child shall notify the other parent of a proposed relocation of the child's principal residence as required by R.S. 9:355.4, but before relocation shall obtain either court authorization to relocate, after a contradictory hearing, or the written consent of the other parent prior to any relocation.

La. R.S. 9:355.3(A).

The particularities of the notification requirement are listed in La. R.S. 9:355.4:

> A. Notice of a proposed relocation of the principal residence of a child shall be given by registered or certified mail, return receipt requested, to the last known address of the parent no later than either:
> (1) The sixtieth day before the date of the intended move or proposed relocation.
> (2) The tenth day after the date that the parent knows the information required to be furnished by Subsection B of this Section, if the parent did not know and could not reasonably have known the information in sufficient time to comply with the sixty-day notice, and it is not reasonably possible to extend the time for relocation of the child.
>
> B. The following information, if available, shall be included with the notice of intended relocation of the child:
> (1) The intended new residence, including the specific address, if known.

4

(2) The mailing address, if not the same.
(3) The home telephone number, if known.
(4) The date of the intended move or proposed relocation.
(5) A brief statement of the specific reasons for the proposed relocation of a child, if applicable.
(6) A proposal for a revised schedule of visitation with the child.
(7) A statement informing the other parent that an objection to the proposed relocation shall be filed within thirty days of receipt of the notice and that the other parent should seek legal advice immediately.

C. A parent required to give notice of a proposed relocation shall have a continuing duty to provide the information required by this Section as that information becomes known.

La. R.S. 9:355.4.

The second step in the relocation process is to seek a court order or consent of the non-custodial parent: "A parent seeking to relocate the principal residence of a child shall not, absent consent, remove the child pending resolution of dispute, or final order of the court, unless the parent obtains a temporary order to do so pursuant to R.S. 9:355.10." La. R.S. 9:355.5.

Should the primary custodial parent relocate the child prior to obtaining judicial authorization or non-custodial parental consent, the following repercussions may apply:

The court may consider a failure to provide notice of a proposed relocation of a child as:
(1) A factor in making its determination regarding the relocation of a child.
(2) A basis for ordering the return of the child if the relocation has taken place without notice or court authorization.
(3) Sufficient cause to order the parent seeking to relocate the child to pay reasonable expenses and attorney fees incurred by the person objecting to the relocation.

La. R.S. 9:355.6.

In addition, failure to follow the relocation requirements may be grounds for a modification of custody. La. R.S. 9:355.11. The court in *Hilman v. Davis* explains:

> If a custodial parent gives the appropriate relocation notice, the proposed relocation "*shall not* constitute a change of circumstances warranting a change of custody." La.R.S. 9:355.11 (emphasis added). However**, if the custodial parent fails to give the required relocation notice, that failure "*may* constitute a change of circumstances warranting a modification of custody.**" Id. (emphasis added).

*Hillman v. Davis*, 02-0685 p. 8 (La.App. 3 Cir. 12/11/02), 834 So.2d 594, 599 (emphasis added).

In the case *sub judice*, Woods sent a letter notifying Martin of her intent to relocate Austin thirty days in advance and stated that she would provide Martin of her new address upon arrival. Since La.R.S. 9:355.4 requires a sixty day notice, Woods violated the relocation procedure. Martin filed an objection with the court against the relocation on December 28, 2011, but it is unclear whether Woods received service of this objection. In the meantime, Woods moved herself and Austin to Covington, Louisiana in January 2011 without obtaining consent from Martin or authorization from the trial court thereby violating La. R.S. 9:355.3(A) and La. R.S. 9:355.5. Furthermore, upon Martin's filing the objection to relocation, the court issued an order requiring Woods to return Austin to Vernon Parish. As is the case with the objection, it is unclear from the record whether Martin was served with this order.

In addition to objecting to the relocation, Martin requested a modification of custody due to the procedure violations Woods committed during the relocation of Austin. The trial court agreed and granted the requested modification. We disagree with Martin and the decision of the trial court. Martin as the party seeking custody modification must show that there has been a change in circumstances since the original custody judgment and that the proposed custody arrangement would be in the best interest of the child. *Schuchmann v. Schuchmann*, 768 So.2d 614. Furthermore, this court has recognized that, through

6

the clear language of La.R.S. 9:355.11, failing to adhere to notice requirements may or may not be grounds for modifying custody. *Hillman v. Davis*, 834 So.2d 594.

At the time of the hearing, Austin was seven years old, in the first grade, and had resided with her mother her entire life. Woods moved Austin to Covington for a new job with a substantially higher salary than the one in Vernon Parish, and they now live with Woods's new husband in a home in Mandeville, Louisiana. By contrast, Martin's home in Vernon Parish was in the foreclosure process at the time of the hearing. Should Martin be designated as the domiciliary parent, he stated that he and Austin may have to live in relatives' homes for an unclear amount of time. Moreover, Martin works in the construction and mechanical industry and often works nights and has inconsistent working hours. Due to the young age of the child and the existing familial structure in which the child resides, the evidence indicates that it is in the best interest of the child to continue to primarily reside with Woods. The trial court abused its discretion in removing Woods's status as domiciliary parent and instating Martin as domiciliary parent.

Another reason for which Martin sought modification of custody is that Woods allegedly was non-compliant with the joint implementation plan originally ordered. Martin alleged that prior to the relocation, Woods neglected to make Austin available for visitation, and that after the relocation, Woods refused to cooperate in transporting Austin half-way between Anacoco, Louisiana, where Martin resides, and Covington, Louisiana. However, Woods testified that Martin received his visitation and exercised that right regularly until she moved to Covington. Woods acknowledged that Martin was unable to exercise his visitation rights after the relocation, but qualified that statement by explaining that she and Martin disagreed frequently about the transportation of Austin between Covington

7

and Anacoco. Woods testified that Martin refused to meet her half-way between their locations and sometimes did not contact her on visitation weekends, while Martin testified that Woods flatly refused his visitation requests. These disagreements between Austin's parents, not unusual in divorce cases, over visitation do not constitute grounds for modification of custody, and the trial court abused its discretion in its judgment removing Woods's domiciliary parent status.

The final reason for which Martin sought to modify custody is that Woods resided with her new husband for two months prior to their marriage, in violation of the original implantation plan which forbade overnight guests of the opposite sex. The supreme court recently explained how to analyze the moral fitness of parents in light of the best interest of the child standard:

> La. [Civ. Code] art. 131 [and La. Civ. Code art. 134] [were] revised in 1993 to provide that the moral fitness of the parents is now a factor to be considered only insofar as it affects the welfare of the child. This "reflects the jurisprudential rule that moral misconduct should be considered only if it has a detrimental effect on the child, not to regulate the moral behavior of the parents." *Rigby*, *supra* at 114.

*Griffith v. Latiolais*, 10-0754 p. 18 (La. 10/19/10), 48 So.3d 1058, 1071 (quoting Kenneth Rigby, *1993 Custody and Child Support Legislation*, 55 La.L.Rev. 103, 110 (1994)). Here, Martin presents no evidence that Woods's co-habitation affected the welfare of Austin or that it had a detrimental effect on her, nor does the record support these notions. Woods's co-habitation, then, does not constitute grounds for custody modification, and the trial court abused its discretion in so finding.

In conclusion, the trial court abused its discretion in removing Woods's status as domiciliary parent and instating Martin as domiciliary parent. We reverse the decision of the trial court insofar as this aspect of the judgment. We affirm the judgment of the trial court ordering Woods to pay Martin $200.00 plus court costs

8

and $400.00 in attorney fees incurred as a result of Martin's objection to the relocation. *See* La. R.S. 9:355.6, *supra.* Finally, we remand this matter for a new trial with the purpose of instituting a new implementation plan in light of Woods's and Austin's relocation.

We note that Woods' second assignment of error was that the trial court erred in denying Woods's motion for a new trial. However, this issue is pretermitted by our decision as to the first assignment of error. Therefore, Woods's second assignment of error is moot.

**CONCLUSION**

The trial court abused its discretion in removing Beverly Woods's status as domiciliary parent and instating Kenneth Martin as domiciliary parent. We reverse the decision of the trial court insofar as this aspect of the judgment. We affirm the judgment of the trial court ordering Beverly Woods to pay $200.00 plus court costs and $400.00 in attorney fees incurred as a result of Kenneth Martin's objection to the relocation. Finally, we remand this matter for a new trial with the purpose of instituting a new implementation plan in light of Woods's and Austin's relocation. Costs of appeal are assessed to appellee, Kenneth Martin.

**REVERSED IN PART, AFFIRMED IN PART, & REMANDED.**

KENNETH MARTIN

VERSUS

BEVERLY S. MARTIN, NOW WOODS

**PICKETT, J., dissenting.**

I disagree with the majority's reversal of the trial court's change in custody.

When ruling after the hearing on the father's motions, the trial court assigned oral reasons. Those reasons show the trial court determined the mother was not concerned with and did not comply with the trial court's orders and custody implementation plan. With regard to the custody implementation plan, the trial court noted that she was uncooperative in some instances, e.g., did not share information concerning their daughter with her ex-husband unless he specifically requested that information, and that she blatantly ignored the provisions of the plan in other respects, e.g., allowed visitors of the opposite sex to stay overnight in the presence of the child. More importantly, the trial court determined the mother did not have the child's best interest as her main concern. Rather, she was interested in what was best for her. The trial court also determined the child had a support network in Vernon Parish where she thrived before her mother moved. For these reasons and others assigned by the trial court, I do not think the mother showed the trial court's judgment should be reversed and would affirm the judgment of the trial court.